# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GIANCARLO GIACOMANTONIO,

    Petitioner,

    v.                                           Case No. 17-CV-689

MICHAEL MEISNER,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Giancarlo Giacomantonio, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Giacomantonio was convicted of sexual exploitation of a child and sentenced to eight years, consisting of five years of initial confinement followed by three years of extended supervision. Giacomantonio alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Giacomantonio challenges his judgment of conviction for sexual exploitation of a child in Milwaukee County Circuit Court. (Answer to Habeas Petition ("Answer"), Ex. 1, Docket #8-1 at 1–2.) The charges arose from conduct occurring between Giacomantonio and his step-daughter between November 2, 2012 and September 6, 2013 when the step-daughter was between the ages of fifteen and sixteen years old. (*State v. Giacomantonio*, Appeal No. 2015AP968 (Wis. Ct. App. July 12, 2016), Answer, Ex. 5, Docket # 8-5 at 2.) The victim's mother suspected that her husband, Giacomantonio, had been sexually

abusing her daughter, who had attempted suicide in December 2012. (*Id.* at 3.) During this period Giacomantonio and the victim's mother were undergoing a marital separation and were staying in separate rooms in the home. (*Id.* at 3 n.3.) After the suicide attempt, the victim underwent psychiatric and psychological counseling. (*Id.* at 3.) On September 6, 2013, the victim's mother found some "alarming texts" on her daughter's cellphone and took the phone to the police. (*Id.*) Her mother had access to the phone's contents because the phone did not have a lock. (*Id.*)

A detective searched the victim's phone at the police station and located texts from Giacomantonio's cellphone to the victim's cellphone saying "I want my booty" and "I want my boty." (*Id.*) At trial, the victim identified one phone number belonging to Giacomantonio's cellphone and the other phone number as belonging to her phone. (*Id.* at 4.) Giacomantonio sent his step-daughter a text asking her to "come to my room," stating that he "want[ed] [his] booty today," and that he had plans for the victim and her girlfriend. (*Id.*) The victim testified that Giacomantonio would often text her "to go to his room late at night" and sent her text messages all the time about her "booty." (*Id.* at 5.) She testified that if she refused to provide Giacomantonio with photographs of her bare buttocks and vagina, which he referred to as her "booty" or "boty," he would withhold affection and prevent her from seeing her friends. (*Id.*) However, if she complied with his demands, he would be more supportive, more lenient, and would supply her and her friends with alcohol. (*Id.*)

Pretrial, Giacomantonio moved for an *in camera* review of the victim's mental health records. (*Id.*) Giacomantonio argued that her mental health records were likely to show

whether she was being truthful about her relationship with Giacomantonio. (*Id.*) He further argued that if his step-daughter had discussed Giacomantonio's crime, the therapist would have been required, by law, to disclose that information pursuant to Wisconsin's mandatory reporting law. (*Id.* at 5–6.) The trial court denied Giacomantonio's motion, finding that the victim's mental health records would be cumulative. (*Id.* at 6.) The trial court found that Giacomantonio could pursue the facts by "other avenues," including his independent knowledge of his step-daughter's suicide attempts and her relationship with another minor that the victim's mother felt was inappropriate and that she had allegedly been untruthful about. (*Id.*) Giacomantonio argued that without the *in camera* review, he was unable to dispute the victim's claim that she attempted suicide because of him and her claim that she felt controlled and manipulated by him such that he was able to induce her to illicit sexual behavior. (*Id.*)

On appeal, Giacomantonio again argued that his right to present a defense was infringed upon when the trial court refused to conduct an *in camera* review of his step-daughter's treatment records. (*Id.*) The court of appeals rejected this argument. Applying *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.22 719 (Ct. App. 1993) and *State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N. W.2d 298, the court of appeals found that Giacomantonio failed to make a preliminary showing that the records were material to the defense. (*Id.* at 17.) The Wisconsin Supreme Court denied Giacomantonio's petition for review on January 9, 2017. (Answer, Ex. 8, Docket # 8-8.) Giacomantonio filed a timely petition for writ of habeas corpus in this court on May 16, 2017. (Docket # 1.)

# STANDARD OF REVIEW

Giacomantonio's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Giacomantonio raises a single ground for relief in his habeas petition: whether his constitutional due process right to present a complete defense was violated when the state trial court denied him access to his step-daughter's psychological treatment records. (Docket # 1 at 13–15.) More specifically, Giacomantonio argues that pursuant to *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), he was entitled to pretrial review of the victim's treatment records. (Petitioner's Br. at 8–15, Docket # 11.)

In *Ritchie*, the Supreme Court found that to obtain *in camera* review of confidential documents, the defendant must make a plausible showing of how the records are both

5

material and favorable to his defense. *Moseley v. Kemper*, 860 F.3d 1020, 1023–24 (7th Cir. 2017) (citing *Ritchie*, 480 U.S. at 58 n.15). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Ritchie*, 480 U.S. at 57. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The mere possibility that an item of undisclosed information might have helped the defense does not establish materiality in the constitutional sense. *Id.* at 58 n.15 (quoting *United States v. Agurs*, 427 U.S. 97, 109–110 (1976)).

Giacomantonio argues that he did make a specific and plausible showing that the victim's counseling records would produce material evidence. (Petitioner's Br. at 11–13.) Giacomantonio argued that the records would establish that the victim did not report the assault to her therapist. (*Id.* at 12.) He further articulated that the purpose of the victim's therapy was to address interpersonal relationships with family, as well as the belief that she made at least two suicide attempts. (*Id.* at 11.) Giacomantonio argued that he expected the records would detail the victim's relationship with Giacomantonio, which would be favorable, and the victim's relationship with her mother, which would be unfavorable. (*Id.*) Giacomantonio argues that evidence of a favorable relationship with Giacomantonio would dispute the allegation that the victim provided Giacomantonio illicit pictures to gain privileges. (*Id.*)

The court of appeals found that Giacomantonio merely speculated that there may be evidence of the victim's failure to report the abuse to her therapist. (Docket # 8-5 at 17.) The

court of appeals also found that the actual purpose of the victim's counseling was to address her attempted suicide, not interpersonal family relationships. The court further observed that every sexual assault case involving family members involves interpersonal relationships, but this does not automatically transform every sexual assault case involving family members into one that allows "open season" on the victims' medical records. (*Id.* at 19.) The court of appeals further found that Giacomantonio was "personally aware of many of the facts and the allegations that are set forth in the defense motion" and thus any evidence in the victim's mental health records would be cumulative. (*Id.* at 20.)

Again, to obtain *in camera* review pursuant to *Ritchie*, Giacomantonio must make a plausible showing that the victim's mental health records are material, meaning there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Ritchie*, 480 U.S. at 57. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The court of appeals found that Giacomantonio was not prejudiced by not seeing the victim's mental health records because the jury was aware that the victim did not disclose Giacomantonio's abuse to her therapist. (Docket # 8-5 at 18–19.) The victim herself testified that she did not disclose to her psychologist that anything inappropriate was happening between her and Giacomantonio because she did not want anyone to know. (Transcript of Oct. 14, 2014 – A.M. Jury Trial, Answer, Ex. 11, Docket # 8-11 at 81–82.) In other words, the mental health records would have been cumulative. On this record, this was a reasonable determination by the court of appeals.

Giacomantonio further argues that the court of appeals erred in rejecting his argument that he needed the victim's mental health records to obtain information regarding the interpersonal relationships in the family to rebut the State's argument that he controlled and manipulated her. He further argues that without the benefit of *in camera* review of the treatment records, he was unable to prepare an adequate defense to what the State presented at trial. (Petitioner's Br. at 20–21.) The court of appeals again found that Giacomantonio did not make a sufficient showing of materiality, stating that every sexual assault case involving family members involves interpersonal relationships and one cannot obtain a victim's mental health records simply because the case involves family relationships. (Docket # 8-5 at 19.) The court of appeals also rejected Giacomantonio's argument that he was unable to meaningfully challenge the State's presentation of evidence because Giacomantonio was personally aware of many of the facts and allegations he set forth in his motion and the victim's mental health records would have been cumulative. (*Id.* at 20.) Giacomantonio's mere disagreement with the court of appeals is insufficient to obtain habeas relief. He must show that the court of appeals' decision was unreasonable and he has failed to do so.

In sum, Giacomantonio has not shown the court of appeals' finding runs afoul of *Ritchie*. The victim testified that her relationship with her mother was strained since she found the text messages and that prior to her mother finding the text messages, she believed Giacomantonio was the only person she could talk to or trust. (Docket # 8-11 at 85.) Further, on cross-examination, Giacomantonio's attorney extensively questioned the victim

regarding her strained relationship with her mother and how Giacomantonio was supportive of her, and repeatedly impeached her through prior inconsistent statements she gave to law enforcement. (Transcript of Oct. 14, 2014 – P.M. Jury Trial, Answer, Ex. 12, Docket # 8-12 at 32–64.) Although Giacomantonio may have preferred to have reviewed the victim's mental health records to better cross-examine her, *Ritchie* makes clear that a defendant is not entitled to access confidential records simply to aid in cross-examination. *Dietrich v. Smith*, 701 F.3d 1192, 1197 (7th Cir. 2012) (citing *Ritchie*, 480 U.S. at 53.) In *Ritchie,* the Supreme Court stressed that the Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination "that is effective in whatever way, and to whatever extent, the defense might wish." *Ritchie*, 480 U.S. at 53 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). Thus, "the ability to question adverse witnesses does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Dietrich*, 701 F.3d at 1197 (citing *Ritchie*, 480 U.S. at 53). The Wisconsin Court of Appeals reasonably concluded that Giacomantonio was not entitled to *in camera* review of the victim's mental health records; thus, Giacomantonio is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a

substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Giacomantonio is not entitled to habeas relief. Thus, I will deny Giacomantonio a certificate of appealability. Of course, Giacomantonio retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.


Dated at Milwaukee, Wisconsin this 27th day of August, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge